Anita Mack, Substitute Council for Molly McCann, Lead Council in this case, and I will be representing the appellant, Cross Appellee, which is the State of Louisiana, and also all other defendants listed, previously Warden Burl Cannon in this case. Would you like me to recite the facts or can I start with pertinent issues? I think you should start with pertinent issues. The pertinent issues here, we have two major issues that are before the Court today. The first one is the ineffective assistance of counsel, which comes from Attorney Raymond Cannon, who was appointed counsel for Mr. Ward Jackson during the trial process, making statements in reference to Mr. Jackson's criminal history, which in the complaint of Mr. Jackson is alleged to be a violation of Mr. Jackson's Strickland rights. The second would be prosecutorial misconduct based on a statement made by Assistant District Attorney Linda Watson in which she is alleged to have referenced Mr. Jackson's failure to testify. I'm going to start with the Sixth Amendment right to due process violations alleged by Mr. Ward Jackson in his petition, and in arguing that, we're going to look to the two pronged test components that are established by Strickland. First, counsel's performance would have to be shown to be deficient, requiring that a showing that counsel made errors so serious that he was not functioning as the counsel was guaranteed as appropriate Sixth Amendment effective counsel. The second would be that we must show that the deficient performance prejudiced the defense by showing that his errors were so serious as to deprive the defendant of a fair trial. Here, when looking at those, the Strickland issues must be determined with giving high deference to counsel as far as the tactics used in Section 1 of the prong to determine if he was just being, making erroneous claims or if he was using a clear, distinct tactic. And based on Mr. Cannon's, if you check the record based on his consistent, from the beginning, he did not hide it, he said that he wanted to shoot straight from the hip, Mr. Jackson was a convicted felon and he was out on parole. Right. How was that any kind of strategy if he wasn't contemplating calling Mr. Jackson and the possibility that that would come up? And there doesn't seem to be any evidence that he was going to call him and so he needed to make sure the jury was going to listen to him. And instead, it really undermined the self-defense argument to say, oh, well, he's a multiple convicted person. I mean, don't you think that harms him? Your Honor, what we would contend is that he did utilize this as a strategy. If you review the record, you will see that he was able to weed out witnesses that, I mean, jurors that stated that they couldn't be fair and impartial after hearing this information. And there's also... But he's the one who, he's the only person who thought they needed to hear that information, isn't he? He is, Your Honor. He is. And our contention is that Mr. Jackson... So you weeded out people who heard information that no one ever needed to hear. How is that a strategy? And the reason we contend that that is a strategy is because there's nothing in the record other than a self-serving statement in Mr. Jackson's brief that states that he was not ever intended to be called as a witness. That's an instance in where the record is void in that incident. So there's nothing to show that Mr. Cannon never had any intent to call Mr. Jackson as a witness in this particular case. But you agree, don't you, that the only plausible explanation for him saying... Sounded to me like reading it 55,000 times that his client was out on parole. Then he doesn't... He doesn't just say parole. Then he goes ahead and says what the offense was. That is correct. He does. He was admonished by the court, and even after being admonished by the court, he did continue with this pattern, which led us to believe that there was a strategy for a seasoned attorney with the intent to call... There's no strategy to get your client convicted. I can't... Unless you're telling me there's something to suggest that he intended to call him, and then they decided against it. I mean, unless you're saying that there's some evidence to suggest that that's what his strategy was, I'm all ears for you to tell me what possibly could have been his strategy for doing that. So I'll stop talking and let you tell me. The state contends that Mr. Cannon, under Strickland, there are two prongs that have to be met, and it's not either or, it's and. And we have to be able to show that but for Mr. Cannon making this mistake, there was some equitable argument that would have allowed Mr. Jackson to be acquitted of these charges. And in looking at that, the state contends that the appellant contends that the evidence presented was strong in this particular case. There was nothing presented by the defense that would be equitable. Mr. Cannon specifically did state... There were two jurors who didn't agree with that, weren't there? There were two jurors that did not vote for second degree murder. And if he had a viable self-defense argument, but when you tell the jury that he's on parole for attempted aggravated rape, that's going to... The state contends, the appellant contends that that shows in itself that Mr. Cannon had intent, a seasoned attorney, to mention those things to the jury and attempt to weave them out, had intent to call Mr. Jackson as a witness in that particular case. Was self-defense a viable defense such that prejudice could be established? Self-defense would have been a viable defense if you're looking at the record. Mr. Cannon, from the beginning of Vordaia, did make reference to self-defense. Throughout the trial, he did mention the size of... He harped on the size of the victim. He harped on him being a very tall man in contrast to Mr. Jackson being a very small man. He did talk about his character. There were witnesses that the defense presented to speak on the character of the victim. So he did... It was a viable defense. And that's why we contend that our burden was met because we were able to show that the case was strong even with Mr. Cannon presenting witnesses to that effect. Did I answer your question? I guess you answered it. Thank you. And further, in looking at that, we just... What we have to do is rely on what this Court has done on these type of issues. And the case that I found, there was an unpublished case that... There were many cases that looked to Strickland. And in looking at Strickland, we had to be able to prove that Mr. Cannon's conduct or errors were so serious that it deprived the defendant of a fair trial and that the results of this particular trial were reliable. There's nothing that's been presented to show that the evidence presented... There was a confession in this matter. He did admit to it. There was a girlfriend's, living girlfriend's testimony that he admitted to the specifics of stabbing Mr. Haywood on two occasions. There were eyewitnesses at the offense that actually broke up the altercation that stated that they saw him stab him with the weapon in his hand. The question that he stabbed... He didn't argue that he didn't stab him. Correct. Based on that... Why did he stab him? That's the issue. Yes. And he stabbed him either in self-defense or he stabbed him for not a good reason. And we feel that the record shows that because there was not any evidence to... He basically, in his confession, stated to the law enforcement officers that he was angry because he owed him $100 when he saw him at the nightclub on that particular night. So we feel that we have proven, at the trial level, why he did, in fact, stab him. And we're asking that the Court look to your recent ruling here in the Fifth Circuit... Well, not just the recent ruling. There's one unpublished ruling that was mentioned, and that was Davis v. Johnson, in which it states that that was a specific... The facts were the same. Here, the defendant did, in fact, have counsel that mentioned that he was a convicted felon, and that he... Even though he did not testify, just as he did not... Mr. Jackson did not testify at Mr. Cannon's request, this Court ruled that a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct to evaluate the conduct of counsel's perspective. So what we'd be doing here would be hindsight. We're going back to try to figure out why Mr. Cannon did, in fact, state that... Did you tell me that the trial judge admonished him about... He didn't exactly admonish him, but he did call a sidebar, and the record will show that he questioned him about it, and he told him that he didn't want to entice the jury with this specific conduct if he didn't have reason... But wouldn't that have been an opportunity for him to say, but, Your Honor, I'm intending to call my client to the stand, and so I want to go ahead and offer up all this evidence? Wouldn't that have been the appropriate time for him to say that? It would have been a perfect opportunity for him to say that. And there's no evidence that he said that, is there? There's no evidence in the record. The record is void of that. And there's no evidence in the record that he met with his client and that there were all these... You know, what you would do if you were planning to have your client testify, and it's not in the voir dire that I'm going to call so-and-so, all the normal things, if you've already committed to that strategy. And you'd have to be pretty committed to make that kind of risk. That is correct. There's no evidence to that effect other than Mr. Cannon's actions on voir dire, and that even after speaking with the judge, he continued with this path, and we just contend that based on the case law, the court would have to really be able to show that Mr. Jackson didn't get a fair trial or we did not prove our case, and that's not a reliable verdict in order to make a determination that you're going to overturn what was done at the trial court level. Could I ask you a question about the prosecutorial misconduct claim? No, we have not gotten to that yet. Could I? Yes, please. My question is, it appears in the brief, and even now you said alleged to have referenced. We know what she said. Is it your position that when she says he didn't come up here and he said what his statement, that that's not talking about him testifying? I'm not. She specifically was in colloquy with the jury referencing the confession. The entire colloquy was referencing the confession statements that had been presented to the jury, and there is a blurb while talking about the confession where she does state he didn't come up here. So what does he didn't come up here mean? What could it possibly mean in that context other than he didn't get up here on the stand and testify? If you look at her colloquy, she talked about individual witnesses that testified and what the witnesses said. You're saying that's about somebody else? No, I'm not saying that it's about anybody else. I'm saying that what happened is we can't assume that the jury would infer that based on that statement that she was talking about Mr. Jackson. Well, she was talking about Mr. Jackson, wasn't she? Who else could she have been specifically talking about? He didn't come up here. And that's what the argument is. Who is it that she was talking about? She had to have been speaking about Mr. Jackson, but she did not say his name. If you look at the case law that the Fifth Circuit has previously ruled on, it says that you must show whether the error has substantial injuries effect or influence in determining the jury's verdict. Rather, the error would be harmless beyond a reasonable doubt. There are five factors that this Court has previously given in the Gungorian v. Thaler ruling that needed to be addressed when handling this issue. There are some cases where they have, in fact, stated that the defendant did not testify, and those cases were not overruled by this Court. My question is, do you concede to standing here today reading the cold record that that's not the kind of statement that a prosecutor should make when the defendant is not testifying? Or is it your position that that's okay, even standing here today? Because the brief seems to say that they think it's okay. No, I don't concede that that is okay. I do concede that I would, from being there during the trial, I would say that she was referring to Mr. Jackson, but I would concede that she did not go any further with it. She immediately, as soon as she stated he didn't come up, she immediately stopped it. And what the Court would have to do. Was there a contemporaneous objection? There was an objection. There was an objection, and the Court did address it, the record did address it. And she did come back and she went back into the confession and not into that area. But there was an objection. And we just asked the Court to look at Gongoria v. Thaler, where there were five specific items that were laid out for the Court, and one of them was whether the comments were extensive, which they were not in this case. It was a small blurb, which she did not go any further with it. Whether an inference of guilt from the silence was stretched to the jury, and she did not do that, we feel that she passed that prong. And third, whether there's evidence that could have supported an acquittal. And again, we argued to the Court that the record would show that there was no evidence presented that would support an acquittal in this matter. And based on that, we feel that the Court should give harmless error deference to the prosecutorial statements made by the prosecutor in that specific case. Thank you, Counsel. May it please the Court. This was indeed a case of self-defense, and it was a strong case of self-defense. There was evidence that defense counsel was able to obtain from the state's own witnesses to the effect that Mr. Haywood, the deceased, came into the bar that night, drank five shots, started feeling women's breasts and causing trouble, and was ordered out of the bar. Mr. Jackson, the defendant, was in the bar enjoying himself along with others. Mr. Haywood again attempted to come into the bar, was again thrown out of the bar and told to leave, and instead of leaving, stayed out in the parking lot. And it's only later in the parking lot that Mr. Jackson and he have what two witnesses, Billy Ray Johnson and David Moore, describe as a fight, not an attack, but a fight in which Mr. Jackson does indeed have a knife that he's using in self-defense. The record clearly supports that Mr. Haywood was bigger than he was, older than he was, I mean younger than he was. He had cocaine in his system. He was legally intoxicated, and he had already caused a whole bunch of trouble that evening in the bar. And added to that in terms of this, of course, all goes to prejudice, in terms of the significance and strength of the self-defense defense, was defense witnesses who said, one in particular, I heard Mr. Haywood threaten Mr. Jackson in the bar before he was taken out by the bouncer of the bar. And then you have the judge saying, if I had heard that, I would have felt threatened in that bar, and he allowed three defense witnesses to testify as to Mr. Haywood's, the deceased's reputation in the community as a violent human being, as an aggressive human being, and as a bad person. So, I mean, it's pretty, in my history of doing trial work, this is a pretty incredible self-defense defense. And you come up, of course, it's Louisiana, 10-2 verdict, 10-4 second degree, 2-4 not guilty, 10-2 verdict. And as Judge Walter concluded and found, the heinousness of the crime with which counsel repeatedly, over the course of two days of voir dire, you know, in Louisiana we get a lot of voir dire, over and over defense counsel asked, did you know he was on parole? How would you feel about that? Did you know it had to do with rape, aggravated rape? If you'll recall, one juror said, well, I'd like to know if it was an underage person who was the subject of the aggravated rape attempt. And counsel said, we can't tell you about that. And then, as you pointed out, Judge Graves, when he objected to one of the jurors who said, not only did she say this is a problem, but she explained to all the jurors who were there, the reason I find that I have a problem with this man being on parole after having been convicted of attempted aggravated rape is that my niece was raped by a guy who had been convicted of murder and was on work release. Basically, people who are convicted and serve time and get out commit other crimes. The jurors heard all of that. Prospective jurors, sitting jurors heard that. She was not put on the jury, and the judge said, what are you doing? You have tainted this jury by talking about inadmissible evidence. What counsel said, and all he said was, well, it depends. He said nothing about a plan to call his client, who had been convicted of what is obviously a horrible crime, who would and who needed to. He had a great defense case through the witnesses the state provided and his own defense witnesses. This was not even a close case to call the client. There's clearly ineffective assistance here under Strickland. There's prejudice, and then we get to the issue of where in federal habeas. The district court said it's conceivable. The state district court in post-conviction said it's conceivable that he might have possibly called him, and so he would bring this up in voir dire. First of all, there's no evidence to support that in the record, that it was even conceivable that he was going to call him. But secondly, if that's the standard, that's not the Strickland standard. You cannot, it is not okay just because it's conceivable in every case that you would call your client that you, that it's okay to discuss with the jury for two full days how he was convicted of attempted aggravated rape. That just can't be the law. That is an unreasonable determination of the law in light of Strickland. That is a proper instance where, as Judge Walter found, this is habeas relief is due, and he properly granted habeas relief on the Sixth Amendment issue. Can you discuss AEDPA and the state court's determination? Yes. Well, of course, under AEDPA 2254D, there is a great deal of deference that is due the state court's determination, both in terms of the law and the facts. However, it's not total, and both in my brief and Judge Walter's cite Harrington v. Richter. That's one of the latest cases where they talk about the deference due. But even in Harrington v. Richter, the court, I mean, we still have the federal writ of habeas corpus. It hasn't gone away yet. And so Judge Walter, former prosecutor, U.S. attorney, concluded that this was an unreasonable application. Well, he found it an unreasonable determination of the facts in light of the state court record. So it's not that they did the law wrong on this part. It's that the view of the facts was unreasonable. The facts were unreasonable. That's what Judge Walter found. I agree with that. However, this court could affirm Judge Walter's opinion on the basis that not only, even though he cited the correct law, Strickland v. Washington, the state court judge did not apply it properly to the facts before him, and he didn't. If you look at the other cases, like the Davidson case that this court has issued, that was a situation where the issue of the defendant's prior convictions, none of which were as bad as this aggravated rape attempt, came out during voir dire because both the defense counsel and the defendant had decided in advance he was going to testify. So they made that decision, and as a strategic matter, he says, okay, we're going to have to be the people to bring this up first, not have the state bring it up, and let's see, since you're going to be in front of this jury, how they're going to react to you when it comes out that you have these prior crimes and you testify as a witness. Strategy, good strategy. What happened in that case? They didn't call him because they got thrown for a loop. There was a witness who came in and said, oh, I forgot to tell the prosecutor that this guy a week ago did something else bad, and it's other crimes, and we want to bring it up. The judge said, if you put your client on the witness stand, they get to ask him about that, and they get to prove it not in their case in chief but in rebuttal. Counsel made a strategic decision at that point, let's keep him off the witness stand. That's way different from this case where there's no indication there was any reason ever to put Mr. Jackson on the witness stand. In fact, counsel, to the extent he did wardeer the jury on something other than this attempted aggravated rape conviction, asked the juror specifically not to hold it against his client that he would not testify. So whether you call it an unreasonable application of strickland to the facts or an unreasonable determination of the facts based upon the record, the bottom line is Judge Walter was right. Under Harrington v. Richter, this is one of those rare cases, admittedly rare, when the state court, based upon its conceivable that it could come out, the state court judge is wrong and the writ should be granted. So that's my take on AEDPA and the case law that interprets it, and I think that the conclusion of Judge Walter is right on point. And let me say as a practical matter, if this is okay under strickland, that counsel, because anything could happen in a court, anything could happen in a criminal trial, and it may be that for some bizarre reason I'm going to call my client and he's got a conviction so I'm effective by raising that issue in voir dire, you're putting subsequent counsel in a box because anybody can be faced with that. Now are they going to be ineffective for not talking about it in voir dire? This is not a road down which we need to be going, and I don't think the Fifth Circuit case law requires that we go down this road. And I think that the bottom line is Judge Walter was correct in his ruling and should be upheld on whatever basis you find appropriate, but it should be upheld. Now with respect to the prosecutor's comment, she did make the comment, he didn't come up here. We weren't there, but he didn't come up here probably is what happened. I don't know. But it wasn't just that isolated comment, which clearly and unambiguously refers to the defendant's failure to get up here on the witness stand to testify. It was in the context of her repeatedly saying, with respect to that incredibly good self-defense claim, well, we don't know if Mr. Jackson was mad. Nobody testified if he was mad. Nobody testified as to why he went to car and if he needed to use that knife. Nobody, on and on, if you look at everything she said, both before and after that comment about he didn't come up here, you see she's raising the issue of the absence of proof that only Mr. Jackson could give. So it's in that context that the jury is 10-2 jury is looking at. And I've asked this question of the other side. Was there a contemporaneous objection when she said he didn't come up here? No, Your Honor, there was not. And Ms. Mack is new to the case. I didn't think there was. The objection was this, and I'm glad you asked me that because I was going to note that. The objection was this. She was saying this is what he, and it's a misnomer. It's inappropriate in my mind to call it a confession. He said, look, I admit, I mean, he never contested that he stabbed the guy. He said he had something behind his hand. I had my knife. The only issue was did he say to the police I went to the car to get my knife and then came back as opposed to I should have just got in my car and ran if the guy's threatening. And that's when there was an objection. And it was after that objection where he said that's not, counsel said, that's not what was said to police or that's not what the police testified, that she said, well, he didn't come up here. So the objection, while not on point, adds to the problem because her response to it, as I view the record, was, well, he didn't come up here and say the police. He's already in objection about what he had said or not said before, and so this was in response to that. But then there wasn't a specific objection, but it's. At that point, counsel didn't say now you've really messed up and objected to my client's failure to testify. But she certainly in response to his objection said, you know, he didn't come up here and the two policemen testified. So it's, you know, clearly an unambiguous reference to his failure to testify. And whether you look at them singly or look at them together, what you've got at the end of the day is Mr. Jackson did not have a fair trial. There's no way we can. Was there a request for a curative instruction? There was not that I'm aware of, Your Honor, and I'll be glad to be corrected if I'm wrong, but I don't recall any request for a curative instruction from defense counsel with regard to the statement, if that's what you're referring to. But didn't the court say anything? I don't recall the court's. There was no comment that I'm aware of that was made after she said they didn't come up here. The big brouhaha was when she said he told police he went back to his car to get his knife and then went to Mr. Haywood and counsel objected. And her response was, well, you know, he could have come up here and they testified. And speaking of no instruction, you've got counsel with respect to the other issue, the awful, I mean, you know, we try to keep these clients off the witness stand so that that never comes up, never. You file motions and eliminate whatever you have to do. So he's up there going on and on about this prior conviction. And, of course, there was no evidence of it, so there was no jury instruction, even giving the jurors some guidance as to how to treat this. And it was reinforced by the prosecutor asking Ms. Vollmer, I believe it was, well, you know, would that prior conviction bother you? And that's when she explained about the work release guy raping her niece. So there was no jury instruction to guide how the jurors, who all had heard about this, all knew about it. There was no doubt about it. It was reinforced by the prosecutor what to do about this. Between that and the reference to, you know, he didn't come up here and tell us if he was mad, why he did this, what really happened, you end up with, you know, a 10-2 verdict. And I believe an extremely unfair trial in what was a hugely significant, serious self-defense case. It may be that the Supreme Court gives us some guidance on what lawyers can say after the case that was recently argued. McCoy? Yes. That's a good point. I mean, we don't, this record doesn't support that he said it over Mr. Jackson's objection. I don't think there's any evidence that he consulted with Mr. Jackson, however, and that Mr. Jackson agreed to him saying that. There's no evidence of that. But it is interesting because he really goes off the deep end, much like the attorney in McCoy, you know, in terms of admitting to something guilt. It's not the present case. It's not, but it just goes to show how difficult this work can be. But at the end of the day, we're held to standards. And we can make mistakes, but the clients should not have to pay for them. Is it dispositive whether or not there was an objection? Does any of our case law in the context of direct appeals, where we say you don't have to object to things in closing argument all the time because doing so would draw even more attention to it, is any of that applicable in this context, or is this a big problem that there's no objection? When you're talking about the failure to object to the statement in the closing argument. By the prosecutor. In this context, in a deference situation, you know, we've said it doesn't matter always in a direct appeal. Does it? This is how I think you deal with that because we're in state post. It came up in state post conviction and federal habeas. And in state post conviction, the court ruled on the merits. That's when it could have been an issue. If the court had said procedurally, you didn't object, this is, you can't, they ruled on the merits. So you all should be able to rule on the merits. Thank you. Thank you. You have saved time for rebuttal as well. I'm just coming back to reflect on the prosecutorial misconduct. Ms. Watson, after making the statement about stating that, and that is correct, my memory is refreshed. I've only been on this case four days. But my memory is refreshed. The objection was referencing him getting the knife out of the car. But after receiving the admonishments or whatever about the objection, she did make the statement about he did not come up here and she started back talking about the confession. And she stated, the record will show that she stayed, and I'm referring to the confession here. So she didn't try to deceive the jury into thinking that she was attempting to continue to reference him not testifying. She tried to clear it up to state that she was talking about the confession. And based on that, we contend that that error should be considered as harmless error as it relates to the case law. And looking back at the Strickland standard, it's our contention that Mr. Cannon's defense was self-defense for his client. But there's nothing in the record to show that Mr. Haywood, Mr. Cannon had a perfect self-defense case that would prevent him from possibly considering calling his client. Just because witnesses had previously testified about the size of the defendant, about how the defendant was acting with women in the club on that particular night, there was nothing to show that Mr. Jackson was not the aggressor in this particular case. Coupled with the confession, the fact that Mr. Jackson had, in fact, had to be restrained after stabbing the defendant on two occasions. He then went to his home, he took his car and hid his car at his brother's house, had someone drop him off at home, and his living girlfriend testified to that effect. And then he admitted to her that he'd stabbed the victim. And based on that, we feel that the state presented a good case as far as a strong case as far as proving that he was guilty. We do not contend that Mr. Cannon's tactics were something that precedent has proven to be tactics that should be utilized when conducting voir dire if you're not intending to call the defendant as a witness. The cases that we have found from the Fifth Circuit do state that they did say on the record in some form that they intended to call the witness, and that's why they were talking about his prior convictions. Mr. Cannon did not state that on the record. The record is void of that, but the record is also void of any proof that he had no intent to call the defendant as a witness. And based on that, we're asking that a review would show that there's no evidence to show that there was prejudice, although, yes, it was not a tactic that I would use or I'm sure that the court would like to see used by counsel. There's nothing here that shows that prejudice did, in fact, occur. So based on that, we ask that the habeas petition be denied. Thank you, counsel. Thank you. This case is submitted.